836 So.2d 200 (2002)
Alga MILLER, Pearl Miller, Dalton Miller, Vergis Adams, Rita Adams, Anita Miller, Wilbert Miller and Opal Miller
v.
SUPERIOR SHIPYARD AND FABRICATION, INC., Chris J. Guidry, Louisiana Farm Bureau Mutual Insurance Company, Ulysses Hunter, T.T.C. Illinois, Inc., Lexington Insurance Company, State Farm Mutual Automobile Insurance Company and Allstate Indemnity Company.
No. 2001-CA-2683.
Court of Appeal of Louisiana, First Circuit.
November 8, 2002.
*202 J.B. Jones, Jr., Cameron, for Plaintiffs-Appellants, Alga Miller, et al.
Barry Boudreaux, Houma, Patrick J. McShane, Frederick J. Greschner, Jr., New Orleans, for Defendant, Superior Shipyard and Fabrications, Inc.
Mark C. Dodart, Nora B. Bilbro, New Orleans, for Defendant, Lexington Insurance Company.
Isaac H. Soileau, Jr., New Orleans, for Defendant, T.T.C. Illinois, Inc. and Credit General Insurance Company.
Harold J. Lamy, New Orleans, for Defendant, Ulysses Hunter.
Thomas L. Hutchinson, New Orleans, for Defendants, Louisiana Farm Bureau Mutual Ins. Co. And Chris Guidry.
Cheri T. Burlett, New Orleans, for Defendant, Chris Guidry.
Michael G. Gee, Thibodaux, for Defendant, State Farm Mutual Automobile Ins. Co.
Christopher E. Lawler, Metairie, for Defendant-Appellee, Allstate Insurance Company.
Before: CARTER, C.J., WHIPPLE, and CIACCIO,[1] JJ.
CARTER, C.J.
The issue raised in this appeal is whether insurance coverage is available under a business auto policy. The trial court found that there was no coverage, and for the following reasons, we affirm.

BACKGROUND
This matter arises from an accident that occurred on August 11, 1998, on the premises of Superior Shipyard and Fabrication, Inc. (Superior) in Golden Meadow, Louisiana. A part-time maintenance employee for Superior, Alga Miller (Miller), was run over by a welding truck owned and operated by a sub-contractor employee, Chris Guidry (Guidry), who performed welding services exclusively for Superior's boat repair business.[2] Guidry owned, operated and maintained his own welding equipment and vehicle. He provided liability insurance for his vehicle that he used while performing his welding services. Guidry was paid an hourly wage. Superior considered the wage to include payment for Guidry's labor as well as a fee for the use of his welding equipment. There was no written contract between Superior and Guidry outlining the terms of payment or employment.
Allstate Insurance Company (Allstate) was brought into the litigation as the business auto insurer for Superior.[3] Allstate denied coverage for the accident, contending that Guidry's vehicle was not *203 an insured vehicle and that Guidry was not an insured under the Allstate policy issued to Superior. Allstate and plaintiffs filed cross-motions for summary judgment on the coverage issue. After a hearing, the trial court found that there was no coverage under the policy, denied plaintiffs' motion for summary judgment, granted Allstate's motion for summary judgment, and dismissed Allstate. Plaintiffs appeal, arguing that the trial court erred in determining the coverage issue.[4]

SUMMARY JUDGMENT AND INSURANCE POLICIES
An appellate court reviews a trial court's decision to grant a motion for summary judgment de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Shelton v. Standard/700 Associates, XXXX-XXXX, p. 5 (La.10/16/01), 798 So.2d 60, 64-65. Interpretation of an insurance policy is usually a legal question that can be properly resolved by means of a motion for summary judgment. American Deposit Ins. Co. v. Myles, 2000-2457, p. 5 (La.4/25/01), 783 So.2d 1282, 1286. However, summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy under which coverage could be afforded when applied to the undisputed material facts shown by the evidence supporting the motion. Reynolds v. Select Properties, Ltd., 93-1480, p. 2 (La.4/11/94), 634 So.2d 1180, 1183.
The burden of proof on a motion for summary judgment is on the movant. LSA-C.C.P. art. 966(C)(2). An insurer seeking to avoid coverage through summary judgment must prove that some exclusion applies to preclude coverage. Gaylord Chemical Corporation v. ProPump, Inc., 98-2367, p. 4 (La.App. 1 Cir. 2/18/00), 753 So.2d 349, 352. However, when determining whether a policy affords coverage for an incident, the insured bears the burden of proving the incident falls within the policy's terms. See Doerr v. Mobil Oil Corp., XXXX-XXXX, p. 5 (La.12/19/00), 774 So.2d 119, 124, modified on other grounds on reh'g, XXXX-XXXX (La.3/16/01), 782 So.2d 573.

DISCUSSION
In the instant case, Allstate has shown and plaintiffs do not dispute that Guidry's vehicle was not listed as a covered auto because it was not specifically described in the policy. It is also undisputed that Guidry was not listed as a named insured or insured driver in the policy issued to Superior. Thus, plaintiffs had the burden to show that Guidry was an insured or that Guidry's vehicle somehow qualified as an "insured auto" as defined in the policy, in spite of the fact that it was not listed in the policy.
Plaintiffs argue that the Allstate policy affords coverage to Guidry under two endorsements to the policy adding liability coverage for rental vehicles and hired autos. Plaintiffs rely on a provision in the hired autos endorsement that added to *204 who was an insured under the policy. That provision provided, in pertinent part:
While any covered "auto" described in the Schedule or in the Declarations is rented or leased to you and is being used by or for you, its owner or anyone else from whom you rent or lease it is an `insured' but only for that covered "auto." (Emphasis added.)
The endorsement further provides an additional description of "auto" in the schedule as follows:
All automobiles leased to the Named Insured for a term of not less than one year wherein the Named Insured has agreed in an automobile lease agreement to furnish automobile insurance. (Emphasis added.)
In addition, plaintiffs rely on the language in the rental vehicle endorsement that provides, in pertinent part:
Any "rental vehicle" that is rented by an "insured" under a written rental agreement will be considered a covered "auto." (Emphasis added.)
That endorsement also adds the following language to the definitions section of the policy:
"Rental vehicle" means a motor vehicle of the private passenger, pick-up or van type, not used for business purposes, other than farming or ranching, if:
a. Not used for transporting persons for hire,
b. Owned by a person engaged in the business or leasing vehicles that are rented or leased without a driver, to persons other than the owner, and is registered in the name of such owner. (Emphasis added.)
We have thoroughly reviewed the policy language and evidence offered in support of both motions for summary judgment, and it is clear that there was no written rental agreement between Superior and Guidry for Superior's use of Guidry's vehicle. Additionally, there was no lease agreement wherein Superior agreed to furnish insurance on Guidry's vehicle. We note that the affidavits offered by plaintiffs set forth only ultimate conclusions that Superior rented Guidry's vehicle. However, supporting and opposing affidavits shall be made on personal knowledge and set forth facts that would be admissible in evidence. See LSA-C.C.P. art. 967. Ultimate facts and conclusions of law contained in supporting affidavits cannot be considered for purposes of summary judgment. See Lafayette Ins. Co. v. C.E. Albert Construction Co., Inc., 95-0048, p. 2 (La.App. 4 Cir. 9/15/95), 661 So.2d 1093, 1095, writ denied, 95-2465 (La.1/5/96), 666 So.2d 296.
We find no merit to plaintiffs' argument that the payment of wages made to Guidry for labor and the use of his welding equipment constituted a "rental" or "hiring" of Guidry's vehicle. There is no evidence of any agreement (written or oral) between Superior and Guidry that Superior was renting or leasing Guidry's vehicle. Plaintiffs rely on a copy of an invoice detailing the hours Guidry worked. The invoice does not establish that any agreement was ever reached between Superior and Guidry regarding the rental of Guidry's vehicle. The handwritten invoice contained a notation at the bottom: "$10 Labor" and "$10Equipment." Guidry testified that he did not personally make the notation on the invoice and he did not know who had written it. Superior's owner, Brent Duet, testified that he assumed that Guidry had written the notation on the invoice, but he did not know who had actually written it. Since the evidence does not establish who made the written notation or the meaning/intent of the words, the invoice cannot be considered as proof of a rental agreement between Superior *205 and Guidry regarding Guidry's vehicle. Furthermore, Guidry's vehicle does not meet the policy definition of a "rental vehicle" because it was used for business purposes and Guidry was not engaged in the business of leasing vehicles without a driver. Thus, the "rental vehicle" endorsement does not provide coverage in this instance.
The meaning of "leased" or "hired" vehicles revolves around whether the alleged lessee exercised dominion, control or the right to direct the use of the vehicle. The fact that wear and tear and use of equipment may have been factored into an amount paid to a subcontractor or employee does not make the vehicle a hired or leased auto. See Green v. Bobby A. Freeman Estate, 99-1262, p. 6 (La.App. 3 Cir. 4/5/00), 759 So.2d 201, 205; Gore v. State Farm Mut. Ins. Co., 26,417, p. 5 (La.App. 2 Cir. 1/25/95), 649 So.2d 162, 165, writ denied, 95-0481 (La.4/21/95), 653 So.2d 555. Even if it could be proven that the wages paid to Guidry included a reimbursement of expenses for the use of his vehicle, this still does not constitute a "hiring" or "leasing" of his vehicle. See Dupre v. Maynard, 96-1183, p. 5 (La.App. 1 Cir. 3/27/97), 692 So.2d 36, 39, writ denied, 97-1508 (La.9/26/97), 701 So.2d 986; Johnson v. Continental Cas. Co. (on rehearing), 167 So. 114, 115 (La.App. 2 Cir.1936). When a vehicle is leased, the lessee has complete control over it to use as he sees fit. Id. at 114-115.
The evidence reveals that Superior exercised no control regarding Guidry's vehicle. Deposition testimony of Guidry and Superior owner, Brent Duet, established that no one at Superior ever drove or requested permission to drive Guidry's vehicle. Guidry was responsible for maintaining and insuring his own vehicle. Guidry was the only driver of his vehicle while it was located on Superior's premises. Guidry never left his vehicle at Superior's premises when he finished his work. A Superior supervisor instructed Guidry as to which boat he was to perform his welding services on each day. However, Superior had no control over how Guidry performed the welding services or how he operated his welding equipment or his vehicle. There were no conditions or terms fixed under which Guidry's vehicle was to be used. If Guidry were to leave the employment of Superior, his vehicle and welding equipment would go with him. Superior could not keep the equipment or the vehicle and put another welder into it.
In order for Guidry's vehicle to constitute a hired, leased or rented vehicle within the meaning of the policy language, we believe there must have been a separate contract by which the vehicle was leased, rented or hired to the named insured, Superior, for its exclusive use or control. See Sampay v. Morton Salt Co., 482 So.2d 752, 758 (La.App. 1 Cir.1985), writ granted, 488 So.2d 684 (La.1986), appeal dismissed, 496 So.2d 315 (La.1986). Plaintiffs produced no evidence of any such contract or agreement. We find plaintiffs' arguments to the contrary unpersuasive. For these reasons, there is no coverage under the policy issued by Allstate to Superior for Guidry's alleged negligence.

CONCLUSION
We affirm the trial court's judgment grant of summary judgment in favor of Allstate Insurance Company and against plaintiffs, dismissing Allstate from the lawsuit. All costs of this appeal are to be paid by plaintiffs-appellants.
AFFIRMED.
NOTES
[1] Hon. Philip C. Ciaccio, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Miller subsequently died, and his adult children were substituted as plaintiffs in the lawsuit to assert claims for their father's alleged wrongful death.
[3] There are many defendants named in the lawsuit; however, only Superior, Guidry and Allstate are pertinent to this appeal.
[4] Plaintiffs appealed both the denial of their motion and the granting of Allstate's motion. However, the denial of a motion for summary judgment is not an appealable judgment. Therefore, the trial court's certification that the judgment was final and appealable was ineffectual regarding the denial of plaintiffs' motion for summary judgment. See LSA-C.C.P. art. 968; Belanger v. Gabriel Chemicals, Inc., XXXX-XXXX, p. 5 (La.App. 1 Cir. 5/23/01), 787 So.2d 559, 563, writ denied, 2001-2289 (La.11/16/01), 802 So.2d 612. Nevertheless, because both motions involve the same coverage issue, our review will encompass both motions. See Pitts v. Fitzgerald, XXXX-XXXX, p. 5 (La.App. 1 Cir. 5/10/02), 818 So.2d 847, 850 n. 8.